UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CORY WINSTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:06-CR-140 / 1:08-CV-247 |
| ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM**

Petitioner Cory Winston ("Petitioner") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 355). Pursuant to the Court's Order (Court File No. 356), the United States filed a response (Court File No. 363). Petitioner filed a supplemental motion (Court File No. 362) and a reply (Court File No. 376). This Court initially sentenced Petitioner to 151 months incarceration on October 4, 2007, after Petitioner pleaded guilty on June 25, 2007 to Count One of the Indictment, which charged him with conspiracy to distribute 5 kilograms or more of a mixture and substance containing cocaine hydrochloride ("cocaine"), in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A). Judgment was entered on October 18, 2007 (Court File No. 286). Petitioner timely filed his § 2255 motion on October 3, 2008 (Court File No. 355).

Petitioner claims ineffective assistance of counsel, citing his attorney's: (1) deficiency in negotiating Petitioner's plea agreement and sentencing reduction; (2) failure to contest Petitioner's criminal history score; and (3) failing to contest Petitioner's role enhancement.

The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:06-CR-140), conclusively show Petitioner is not entitled to relief on any of the

claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the reasons stated below.

I. **RELEVANT FACTS AND PROCEDURAL HISTORY**

The underlying facts supporting Petitioner's conviction were stipulated to by Petitioner in his plea agreement:

> From January 2004 and continuing through April 6, 2006, the defendant was in a conspiracy with co-defendants . . . and others to distribute 5 kilograms or more of cocaine hydrochloride, a Schedule II controlled substance.
>
> Beginning in August of 2005, investigators with the Tennessee Bureau of Investigation (TBI) and the Hamilton County Sheriff's Department began investigating the drug trafficking organization led by Cory Winston and Tommy Phillips. During the course of the investigation, a Confidential Informant (CI) was used to conduct controlled calls and make controlled buys ordering cocaine hydrochloride from Winston and marijuana from Phillips.
>
> A wiretap investigation followed and numerous calls were intercepted from members of the conspiracy discussing their illegal trafficking in controlled substances in quantities exceeding 5 kilograms of cocaine. On March 3, 2006, investigators intercepted a series of calls between Vance and Winston. During the conversation, Vance, who maintained drugs and money for Phillips, was attempting to meet with Winston to pay Winston money that he and Phillips owed him.
>
> From February 20 through 21, 2006, monitors intercepted phone calls between Phillips and Winston. During these calls, Winston was heard telling Phillips that he thought he had some marijuana coming to Chattanooga for him to look at. Upon obtaining the marijuana, Winston called Phillips again, and Phillips directed Winston to Vance. After several calls between Winston, Phillips and Vance, it appeared that Winston took a sample of marijuana to Vance and Vance advised Phillips that it was not what they wanted. Phillips made contact with Winston and told him that he would have to take it back due to it not being the right type. Phillips had Vance give Winston $2,750.00 in U.S. currency that he owed to Winston for cocaine he had previously obtained from Winston.
>
> Around this same time period, monitors intercepted calls between Phillips and

Winston discussing how much money Phillips owed Winston for a kilogram of cocaine. Phillips asked Winston if he got the $2,750.00 from Vance for part of the kilogram. Winston was overheard confirming that he did receive the payment. Phillips also stated that he gave Winston $2,500.00 and wanted to know what the balance due to Winston was. Winston advised Phillips that he still owed $15,750.00 to complete the $21,000.00 purchase price. Winston told Phillips that he was trying to get a different type of marijuana for him.

On February 23, 2006, monitors intercepted phone calls between Phillips and Winston, and Phillips and Vance, and Winston and his source in Dalton, Georgia. During these conversations, Winston, Phillips and Vance discussed powder cocaine that was left and how they could get it to Ithornial Maffett, whose role was to add cut to the cocaine to increase its quantity and value. They discussed Winston taking cocaine to Maffett's residence at 10:00. A surveillance team observed Winston arriving at Maffett's house at 10:00, go inside for a short period of time and then drive away. The phone call between Winston and his source of supply in Atlanta involved a discussion about a cocaine deal involving more than 5 kilograms of cocaine.

Voluminous amounts of a series of additional phone calls in February and March, 2006, were intercepted between Winston and several other coconspirators involving discussions of cocaine deals.

On March 31, 2006, investigators executed a search warrant at the residence of Winston. Agents seized numerous documents and receipts, 3 firearms (Winston was a convicted felon at the time), electronic money counter, steroids, syringes, the two target telephones that were being intercepted, and two vehicles.

Both in his plea agreement and at the Rearraignment, Petitioner stipulated the drug organization was led by himself and Phillips (Court File Nos. 136, p. 3; 358, p. 31). Petitioner also stipulated, both in his plea agreement and at the Rearraignment, the proof at trial would show he was "responsible for at least 5 kilograms of cocaine" (Court File Nos. 136, p. 5; 358, p. 33).

Petitioner's base offense level was a 32, based on the 5 kilograms of cocaine for which he was responsible. A 2-level enhancement was imposed for possession of firearms, pursuant to USSG § 2D1.1(b)(1). A 3-level enhancement was also imposed for Petitioner's managerial or supervisory role in the offense, pursuant to USSG § 3B1.1(b). This enhancement was based on the fact

3

Petitioner was the main supplier of cocaine in the conspiracy, his sale of 1 kilogram of cocaine to Phillips, his telephone conversation with his Atlanta source about a transaction involving 5 kilograms of cocaine, and his use of Maffett to "cut" cocaine. After a 3-level reduction for acceptance of responsibility, Petitioner's total offense level was 34.

Petitioner had 5 criminal history points, which included 2 points for being on supervised release at the time of the instant offense. This put Petitioner in Criminal History Category III. As a 34/III offender, Petitioner's advisory Guidelines range was 188 to 235 months. However, because Petitioner was subject to an enhanced statutory minimum sentence under 21 U.S.C. § 841(b)(1)(A), his effective Guidelines range was 240 months.

Prior to sentencing, the United States filed a motion for downward departure pursuant to USSG § 5K1.1 and 18 U.S.C. § 3553(e) (Court File No. 352). Petitioner's attorney also filed a sentencing memorandum describing Petitioner's cooperation and presenting mitigating features about Petitioner. The Court granted the motion for downward departure, and departed 3 levels.[1] The Court sentenced Petitioner to 151 months incarceration. Subsequently, the Untied States filed a Rule 35 motion (Court File No. 352). The Court granted this motion on March 19, 2009, and amended the Judgment Order to state a term of 97 months incarceration (Court File No. 374).

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under

---

[1]This 3-level departure was actually made from a level 35 to a level 32, rather than from a level 34 to a level 31. This is because Petitioner's effective Guideline range of 240 months lay within level 35, criminal history category III.

sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III. DISCUSSION

Petitioner's § 2255 motion asserts three grounds upon which he contends his counsel was so ineffective as to constitute constitutional error: (1) counsel's failure to negotiate a better plea agreement and a larger sentencing reduction; (2) counsel's failure to contest Petitioner's criminal history score; and (3) counsel's failure to contest the leadership enhancement.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. Therefore, the defendant must show defense counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id*. at 58-59. To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must

7

make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

**A. Failure to Negotiate a Better Plea Agreement and Larger Sentence Reduction**

In his first claim for relief, Petitioner alleges his counsel his counsel was not vigorous in securing a favorable plea agreement and a larger departure for substantial assistance:

> My attorney did no negotiating for me. . . . He did not make sure that my time would be lessened in exchange for the help I gave the government. He had me do things without negotiation. . . . Once I got my plea agreement, he told me to just sign it and he assured me that he would cry for me to get less time. . . . Tommy Phillips and I were said to be the leaders of this group but his attorney got his dropped to less than five kilo . . . and got a four point reduction and got sixty-three months. Now, Tommy and I are the same . . . but his attorney worked for him and got him that bargain. . . . Even in court the day of sentencing [my attorney] did not want to argue my three-point versus Tommy Phillips four points. Yes he did ask but did not want to prove it. . . . I ask him to say something so he did but not argue.

(Court File No. 355, p. 13).

Petitioner has presented no evidence, apart from bare assertion, that but for errors of counsel he would not have pleaded guilty but have gone to trial. Petitioner stipulated, both in his plea agreement and orally at his Rearraignment, that evidence established he conspired to distribute more than 5 kilograms of cocaine. Petitioner had a prior felony drug conviction which subjected him to an enhanced sentence under 21 U.S.C. § 841(b)(1)(A). Petitioner's first claim for relief implies that his counsel, if diligent, could have secured a plea to a lesser offense. This claim, supported by no evidence, appears highly implausible on its face considering Petitioner's criminal history and the significant evidence tying him to more than five kilograms of cocaine.

Additionally, Petitioner's recitation of the facts relating to his sentence reduction for

8

substantial assistance is inaccurate. Co-defendant Phillips was sentenced to 70 months, not 63 as Petitioner states (Court File No. 266). Moreover, Phillips received a 3-level departure – just as Petitioner did – rather than a 4-level departure as Petitioner erroneously alleges. Petitioner states his counsel "asked," but "did not want to argue my three-point [departure] versus Tommy Phillips four points." However, Petitioner's counsel's decision not to "argue" against a disparity which exists only in Petitioner's mind constitutes appropriate practice, not ineffective assistance. The Court, possessing both the Government's motion and Petitioner's counsel's memorandum, was fully apprised of the nature of Petitioner's assistance when it sentenced him.[2] Petitioner has not demonstrated any deficiency of counsel, much less how any action taken by counsel might have influenced the Court to grant a larger departure than it did.

Petitioner has demonstrated no error of counsel with respect to the negotiation of his plea agreement or the size of his substantial assistance departure. Nor has he demonstrated that but for any such error he would not have pleaded guilty but would have proceeded to trial. Having failed to satisfy either prong of the *Strickland* test, the Court holds Plaintiff's first claim provides no basis for relief.

**B. Failure to Contest Petitioner's Criminal History Score**

In his second claim for relief, Petitioner claims he erroneously received two criminal history points for being on supervised release at the time of the instant offense, when in reality his supervised release had already ended. According to Petitioner, his supervised release ended in

---

[2]Petitioner cites some assistance he gave the Government which was not reflected in the § 5K1.1 motion. However, this assistance was the basis for the subsequent Rule 35 motion – a motion that resulted in a further sentence reduction – and was not included in the prior motion because the assistance was not yet complete at the time of sentencing.

9

August, 2004, while he did not commit the instant offense until August 3, 2005.

Petitioner is indeed correct that his supervised release for a sentence imposed on January 30, 1998 ended in August, 2004. However, Petitioner is incorrect about the date of the instant offense. The Indictment in this case charges the conspiracy began in January 2004, a date eight months before the termination of Petitioner's supervised release (Court File No. 1). In signing his plea agreement, Petitioner stipulated that "[f]rom January 2004 and continuing through April 6, 2006, the defendant was in a conspiracy . . . to distribute 5 kilograms or more of cocaine hydrochloride" (Court File No. 136, p. 3). At Petitioner's Rearraignment Hearing, the fact summary read against him began as follows: "From January 2004 and continuing through April 6, 2006, the defendant was in a conspiracy with others to distribute 5 kilos or more of cocaine hydrochloride." (Court File No. 358, p. 30). Following the reading of the summary, the following colloquy took place:

> THE COURT: Mr. Winston, do you agree with the government's summary of what you did?
>
> DEFENDANT WINSTON: Yes, sir.
>
> THE COURT: Are you offering to plead guilty here today because you are in fact guilty?
>
> DEFENDANT WINSTON: Yes, sir.

(*id*. at p. 33).

Petitioner has presented no evidence showing the charged date of the conspiracy – a date he orally stipulated to on his own – is erroneous such that he did not enter the conspiracy while still on supervised release. Hence, he cannot show that his counsel committed any error. Moreover, even if the 2 criminal history points were not assigned Petitioner's sentence would not have been affected. Without the two points Petitioner would have had an offense level of 34 and a criminal history

category of II, with a Guidelines range of 168-210 months. However, because Petitioner faced a mandatory minimum of 240 months, his effective offense level would have been 36, since 36/II is the lowest Guidelines range that encompasses 240 months. After a 3-level departure, Petitioner would have been at level 33/II, with a Guidelines range of 151-188 months. This range is identical to the 32/III range which the Court applied to Petitioner. Any objection by Petitioner's counsel to Petitioner's criminal history score – assuming counterfactually that such an objection would have had merit – would therefore have had no effect on the sentence imposed by the Court. Because Petitioner can show neither error nor prejudice, his second claim provides no basis for relief.

**C. Failure to Contest the Role Enhancement**

In his third and final claim for relief, Petitioner alleges his counsel failed to contest the 3-level enhancement based on Petitioner's managerial role in the offense. Petitioner states he did not have control over any other person, and that "everyone was their own person and did what they want to and they bought whatever they wanted from whoever they wanted" (Court File No. 355, p. 15). Petitioner alleges his "attorney did not feel like we should argue this" (*id.*).

Although Petitioner asserts he did not have control over anyone, he stipulated in his plea agreement that the drug trafficking organization was led by himself and Phillips (Court File No. 136, p. 3). He further admitted to selling at least 1 kilogram of cocaine to Phillips for $21,000, discussing the purchase of 5 kilograms of cocaine with his supplier in Atlanta, and discussing a plan to cut cocaine to increase its value. This evidence, never mind Petitioner's own stipulation, supports finding he played a managerial or supervisory role in the conspiracy, pursuant to USSG § 3B1.1(b).

Moreover, as with his second claim, Petitioner cannot show the role enhancement had any effect on his sentence. Even without the 3-level role enhancement, Petitioner would have had an

11

effective Guidelines range of 240 months due to the statutory mandatory minimum. Because the departure for substantial assistance is made from the lowest offense level whose range includes the mandatory minimum, rather than from the offense level as calculated without reference to the statutory minimum, Petitioner would have received an identical sentence with or without the role enhancement. Because Petitioner can show neither that his counsel erred by failing to object to the role enhancement, nor that he was prejudiced by such failure, his third claim provides no basis for relief.

## IV. CONCLUSION

None of the grounds asserted by Petitioner supports a finding his counsel's assistance was ineffective. For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States or otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 355).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Rule 24 of the Federal Rules of Appellate Procedure. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure, or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**